UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION** at **LONDON**

CARTER DEAN ESTEP,       )
                           )
    Plaintiff,       )   Civil Case No.
                         )   6:19-cv-76-JMH
V.                     )
                         )
ANDREW SAUL, Commissioner  )   **MEMORANDUM OPINION**
of Social Security,     )     **AND ORDER**
                         )
    Defendant.       )

** ** ** ** ** **

Plaintiff Carter Dean Estep brings this action under 42 U.S.C. § 405(g) to challenge Defendant Commissioner's final decision denying Plaintiff's application for Social Security Disability Insurance Benefits. [DE 1]. The specific matters currently before the Court include Plaintiff's Motion for Summary Judgment [DE 8] and Defendant's Motion for Summary Judgment [DE 10]. Both matters are now ripe for decision, and for the reasons discussed below, Plaintiff's Motion for Summary Judgment [DE 8] will be denied, and Defendant's Motion for Summary Judgment [DE 10] will be granted. Accordingly, the Court will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 1, 2016, Plaintiff filed a Title II application for disability insurance benefits, alleging her disability began on March 2, 2015. [Tr. 116-17]. At the time of Plaintiff's alleged

disability onset date, he was 50 years old. [Tr. 116]. Plaintiff completed the twelfth (12th) grade, and his past relevant work was as a surface miner, [Tr. 330], which Plaintiff claims required him to lift between twenty (20) and fifty (50) pounds and stand six (6) to seven (7) hours per day. [Tr. 73-74]. In Plaintiff's application materials, he initially alleged he was unable to work due to high blood pressure, diabetes, depression, and pain in his rotator cuff, back, neck, both legs, knees, and shoulders. [Tr. 116-17]. However, Plaintiff asserts that only his "shoulder (rotator cuff) pain, neck pain, back pain, and knee pain" are relevant to his present Motion [DE 10]. [DE 10, at 2 (citing [Tr. 329])].

In 2005, Plaintiff injured his left shoulder, and Dr. Beliveau performed a rotator cuff surgery in 2006. [Tr. 77]. In 2010, Plaintiff suffered an injury to his right shoulder, and Dr. D'Angelo performed a rotator cuff repair and clavicle excision the same year. [Tr. 78]. Following both the 2006 and 2010 surgeries, Plaintiff returned to full duty work, which he continued until he injured his left shoulder again on March 2, 2015. [Tr. 77-78]. In April 2015, Ryan Donegan, M.D., performed Plaintiff's second left shoulder surgery. [Tr. 79]. Following the April 2015 shoulder surgery, Plaintiff attended physical therapy to improve shoulder functionality for approximately five (5) months. [Tr. 582-701]. In addition to physical therapy, Plaintiff saw Robert Royalty, M.D.,

2

and Dr. Donegan for treatment and evaluation of his shoulder pain. [Tr. 705-90, 888-90, 892-96, 912-16].

In January 2016, Dr. Donegan referred Plaintiff to Robert Pruden, P.T., for a functional capacity evaluation. [Tr. 918-95]. Pruden found Plaintiff was able to work at the light physical demand level. [Tr. 918]. However, Pruden asserted that "should be considered [Plaintiff's] minimal safe functional level." *Id.* Pruden suggests that Plaintiff voluntarily gave submaximal effort resulting in false positive results for true weakness and Plaintiff only passing twenty (20) out of the thirty-four (34) validity criteria during the functional capacity evaluation. [Tr. 918-19]. Following Dr. Donegan's January 2016 examinations, Dr. Donegan found Plaintiff had a 10% left shoulder impairment and a 6% whole person impairment. [Tr. 790].

In addition to the above medical professionals, Plaintiff was also examined by several other medical experts for his workers' compensation claim, so the Administrative Record includes several medical opinions describing Plaintiff's physical impairments. [Tr. 967-70, 972-82, 1004-16, 1035-40, 1042-45]. On May 10, 2016, David E. Muffly, M.D., opined that due to Plaintiff's work injury he required permanent restrictions of no more than 20 pounds of overhead lifting, no more than 40 pounds of lifting from his waist to his chest, and no overhead work. [Tr. 970]. On August 17, 2017, after examining Plaintiff again, Dr. Muffly found that Plaintiff's

injuries still required the same restrictions. [Tr. 1040]. On June 15, 2016, another doctor, Stephen Autry, M.D., found Plaintiff did not retain the physical capacity to return to the type of work he performed at the time of his injury and "should avoid tasks which involve repetitive bending, twisting, stooping, crouching, and overhead or above shoulder use of arms and no climbing or lifting more than 20 pounds on a regular basis." [Tr. 982]. On August 30, 2016, pulmonologist Bruce Broudy, M.D., found Plaintiff had "no significant respiratory impairment requiring treatment." [Tr. 1045].

In September 2016, at the request of Dr. Sherry Miller, Plaintiff saw Jill DeLair, PA-C, for a consultative examination. [Tr. 967-99]. Ms. DeLair assessed that Plaintiff was "disabled from all work activities for which he is qualified for by training or experience." [Tr. 998].

On November 15, 2016, Dr. Royalty asserted that his medical opinion of Plaintiff's limitations was as follows: Plaintiff could not work any hours in a day; Plaintiff could stand for only two (2) hours in an eight-hour workday; Plaintiff could sit for six (6) hours in an eight-hour workday; Plaintiff could lift ten (10) pounds on an occasional basis; Plaintiff could not lift any weight on a frequent basis; Plaintiff could frequently manipulate objects with his right hand; Plaintiff could occasionally manipulate objects with his left hand; Plaintiff could not squat, crawl,

4

climb, or reach above shoulder level; Plaintiff could occasionally bend; Plaintiff required a total restriction from unprotected heights and moving machinery; Plaintiff required moderate restrictions from changes in temperature and humidity, driving automobiles or equipment, and from being exposed to dust, fumes, and gases; and Plaintiff had severe pain. [Tr. 992]. Dr. Royalty found that Plaintiff was "unable to work due to these conditions." [Tr. 992].

On July 26, 2017, Melissa Collett, APRN, opined that Plaintiff: could not work any hours in an eight-hour workday; could stand no more than one (1) hour in a workday; could sit four (4) hours in a workday; could only lift five (5) pounds on an occasional basis; could not lift any weight on a frequent basis; could not bend, squat, crawl, climb, work from an unprotected height or with moving machinery; could only reach above shoulder level occasionally; required mild restrictions from changes in temperature and humidity and driving automobiles or equipment; required moderate restrictions from exposure to dust, fumes, and gases; could frequently manipulate objects in either his left or right hand; and suffered from severe pain. [Tr. 1018]. Ms. Collett found that Plaintiff would be forced to miss more than twenty (20) days of work per month due to his conditions. [Tr. 1018].

According to Plaintiff's administrative hearing testimony, he began seeing Ms. Collett in "probably 2000" and saw her

approximately "[e]very three months." [Tr. 84]. Despite Plaintiff alleging he saw Ms. Collett since 2000, in the Administrative Record [DE 6-1], the only reports of Ms. Collett treating Plaintiff are from January 24, 2017, [Tr. 1020-21], March 31, 2017, [Tr. 1022-24], and July 24, 2017, [Tr. 1025-28]. The January 24, 2017, visit was for a checkup and so Plaintiff could get refills on his medications. [Tr. 1020]. On March 31, 2017, Plaintiff saw Ms. Collett for a commercial driver's license physical examination. [Tr. 1022]. On July 24, 2017, Plaintiff had a follow up with Ms. Collett regarding his chronic medical conditions and medication refills and to get some lab results. [Tr. 1025].

During the July 24, 2017, examination, Plaintiff asserted that he experienced "pain associated with catching and popping" in his left shoulder and that the pain occurred "with all activities." [Tr. 1025]. Aside from notes about Plaintiff having multiple surgeries and deformity on his right shoulder, there is no mention of similar issues with his right shoulder. [Tr. 1025]. Ms. Collett found that Plaintiff had pain and apprehension and "limited extension" in his left shoulder. [Tr. 1025-26]. A July 3, 2017, MRI of Plaintiff's left shoulder showed abnormalities that were "probably related to chronic anterior labral tear." [Tr. 1001].

On October 2, 2017, Plaintiff saw Dr. Donegan and asserted that his chief complaint was right shoulder pain and active problems with joint pain in both knees and his left shoulder. [Tr.

6

1057]. Plaintiff further asserted that the pain in his right shoulder had progressed over the previous six (6) months, was constant even when the right shoulder was at rest, caused difficulty with sleeping, and resulted in him barely being able to lift his right arm above his head. [Tr. 1057]. Dr. Donegan noted that Plaintiff had "[n]o treatment for this right shoulder prior to arrival however he's had significant shoulder surgical history for the left shoulder." [Tr. 1057]. Dr. Donegan assessed that Plaintiff had "[r]ight shoulder pain calcific Tendinitis versus possible tear" and "[r]ight shoulder arthritis." [Tr. 1059]. Dr. Donegan "recommended [a] subacromial injection to see if [Plaintiff's] pain respon[ds] to this." [Tr. 1059]. On October 13, 2017, Plaintiff returned for a follow-up with Dr. Donegan and asserted that he got "one day of relief out of the shot." [Tr. 1061]. Dr. Donegan again assessed "[r]ight shoulder pain likely due to cuff tear with arthritic change" and prescribed Plaintiff pain medication until Plaintiff could get an MRI. [Tr. 1063].

During Plaintiff's October 17, 2017, administrative hearing, Plaintiff's counsel agreed that after the late submission of Dr. Donegan's October 2017 treatment note, there was no other evidence that needed to be submitted into the record. [Tr. 69-70]. However, as Defendant correctly asserts, after the administrative law judge ("ALJ") issued her April 24, 2018, decision, [Tr. 48-59], Plaintiff submitted additional medical records, including the following

7

records from during the relevant period: (a) March 15, 2017, and June 23, 2017, opinions by Dr. Donegan that Plaintiff could perform light work and return to work without any other restrictions and limitations; and (b) duplicate records from Bluegrass Orthopedics that are already found elsewhere in the Administrative Record [DE 6-1]. [DE 10, at 6 (citing [Tr. 2; 92-114])]. Moreover, Plaintiff submitted the following records from after the relevant period: (a) a December 10, 2018, treatment note from Dr. Donegan [Tr. 8-12]; (b) a transcript of a June 15, 2018, oral witness statement by Dr. Donegan [Tr. 18-31]; (c) a June 6, 2018, treatment note from Dr. Donegan (Tr. 32-36); (d) a May 7, 2018, follow-up evaluation of Plaintiff's right shoulder pain by Dr. Donegan [Tr. 37-38]; and (e) May 31, 2018, treatment notes [Tr. 39-44].

Also, during the October 17, 2017, administrative hearing, Plaintiff provided testimony about his symptoms from his impairments, work history, and daily activities. [Tr. 66-86]. In addition to Plaintiff's testimony, William Ellis, the vocational expert, testified that a person of Plaintiff's age, education, and work experience with Plaintiff's limitations could not perform Plaintiff's past relevant work "as actually performed or as generally performed in the national economy." [TR. 87]. However, Ellis opined that Plaintiff could perform other jobs in the national economy at the "light exertional level," including, but

not limited to, occupation as a "packer," "production worker," or "inspector/tester." [Tr. 87-88].

On April 24, 2018, the ALJ reviewed the evidence of record and denied Plaintiff's application. [Tr. 48-59]. In denying Plaintiff's application, the ALJ found Plaintiff had the following severe impairments: "status post left rotator cuff repair, osteoarthritis of the knee, degenerative changes of the lumbar spine, and obesity." [Tr. 50 (citing 20 C.F.R. § 404.152(c)]. Despite the ALJ finding Plaintiff had multiple severe impairments, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) with the following physical limitations: frequent pushing and pulling with his left arm; frequent climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; frequent stooping, kneeling, crouching, and crawling; and never reaching overhead with his left arm. [Tr. 51]. The ALJ, accepting Vocation Expert Ellis's testimony, found there are jobs other than Plaintiff's past relevant work that he could perform in the national economy, such as a "packer," "production worker," and "inspector tester," so Plaintiff was, therefore, found to not be disabled. [Tr. 59]. On January 28, 2019, the Appeals Council denied Plaintiff's request for review of the ALJ's April 24, 2018, decision [Tr. 48-59], which rendered the decision [Tr. 48-59] final.

Having exhausted his administrative remedies, on March 18, 2019, pursuant to 42 U.S.C. § 405(g), Plaintiff sought review through an action in this Court. [DE 1]. On June 14, 2019, Defendant filed an Answer [DE 6, at 1] contending, "Plaintiff's Complaint represents a Prayer for Relief to which no responsive pleading is required," and denying Plaintiff's allegations. Pursuant to the Court's June 17, 2019, Standing Scheduling Order [DE 7, at 2], Plaintiff was directed to "move for summary judgment or judgment on the pleadings within sixty (60) days."

As will be discussed further herein, on August 12, 2019, Plaintiff filed the present Motion for Summary Judgment [DE 8] arguing, in summary, that the ALJ erred because the record allegedly "does not contain substantial evidence to support the Commissioner's decision denying the Plaintiff's Disability benefits, and the decision was arbitrary and erroneous as a matter of law." [DE 8, at 1]. Responding to Plaintiff's Motion for Summary Judgment [DE 11], on September 11, 2019, Defendant filed a Motion for Summary Judgment [DE 10] contending the ALJ's decision [Tr. 48-59] should be affirmed because the ALJ's decision [Tr. 48-59] was supported by substantial evidence. [DE 10, at 7-13].

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a reviewing court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has

10

made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993) (citations omitted).

The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citations omitted). The limited nature of substantial evidence review prevents the reviewing court from substituting its judgment for that of the ALJ. Rather, so long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth*, 402 F.3d at 595 (citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted).

"In determining whether the Secretary's factual findings are supported by substantial evidence, [the Court] must examine the

11

evidence in the record 'taken as a whole . . . .'" *Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 683 (6th Cir. 1992) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)). Additionally, the Court "'must take into account whatever in the record fairly detracts from its weight.'" *Wyatt,* 974 F.3d at 683 (citing *Beavers v. Secretary of Health, Educ. & Welfare,* 577 F.2d 383, 387 (6th Cir. 1978). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted). "If the Secretary's findings are supported by substantial evidence, then we must affirm the Secretary's decision even though as triers of fact we might have arrived at a different result." *Elkins v. Secretary of Health & Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

## III. DISCUSSION

Under the Social Security Act, the term "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A five-step sequential evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In summary,

12

the five-step sequential evaluation process is as follows:

> The first step is to determine whether the claimant is engaged in significant gainful activity. 20 C.F.R. § 416.920(b). If not, the second step is to determine whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." § 416.920(c). If there is a severe impairment, the third step is to determine whether the impairment meets or exceeds the criteria of one of the listed impairments in Appendix 1. § 416.920(d). If the claimant does not satisfy one of the listings, the [fourth step] is to determine whether the claimant's impairment prevents him from performing his past relevant work. § 416.920(e). If it does not, the claimant is found not disabled. [At the fifth step,] [i]f the impairment prevents a return to former work, the claimant's residual functional capacity must be determined, *id.,* and it is then considered in conjunction with the claimant's age, work experience and education in order to ascertain whether the impairment or combination of impairments prevents the claimant from doing other work. § 416.920(f); *see also* Subpart P, Appendix 2, Tables 1–3.

*Williamson v. Secretary of Health and Human Services,* 796 F.2d 146, 149 (6th Cir. 1986); *see also* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

The claimant "bear[s] the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work." *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). "[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy." *Id.*

13

Since the Parties' cross Motions for Summary Judgment [DE 8; DE 10] concern the same facts, the Court will consider the Parties' Motions [DE 8; DE 10] together. The issue presently before the Court is whether the ALJ erred by failing to support his finding that Plaintiff was not disabled with substantial evidence or by failing to properly evaluate Plaintiff's subjective complaints of pain.

## A. WHETHER THE ALJ'S DECISION IS SUPPORTED BY SUBSTIANTIAL EVIDENCE

Federal regulations provide that the Social Security Administration makes disability determinations based on "all the evidence in [the] case record." 20 C.F.R. § 404.1520(a)(3). Furthermore, the Social Security Administration is to "always consider the medical opinions in [the] case record together with the rest of the relevant evidence [they] receive." 20 C.F.R. § 404.1527(b). "In evaluating the intensity and persistence of [a claimant's] symptoms, [the Administration] consider[s] all of the available evidence from [a claimant's] medical sources and nonmedical sources about how [a claimant's] symptoms affect [them]." 20 C.F.R. § 404.1529(c)(1).

Regarding how much weight the Administration gives medical opinions, treating sources' medical opinions are generally given more weight, 20 C.F.R. § 404.1527(c)(2), unless the treating source's medical opinion is inconsistent with the record as a

whole, 20 C.F.R. § 404.1527(c)(4).[1] When a treating source's opinion is not given controlling weight, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544); *see also* 20 C.F.R. § 404.1527(c). "Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the [previously mentioned] factors in deciding the weight we give to *any* medical opinion." 20 C.F.R. § 404.1527(c) (emphasis added). Pursuant to 20 C.F.R. § 404.1527(c)(2), the ALJ "will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."

Generally, more weight is given to the medical opinion of an examining source than to the medical opinion of a non-examining source. 20 C.F.R. § 404.1527(c)(1). However, "the nature of the examining relationship is but one factor that bears on the weight to be given to a medical source opinion." *Carter v. Colvin,* 27 F. Supp. 3d 1142, 1151 (D. Col. 2014) (citing 20 C.F.R. §

---

[1] Medical opinions for claims filed on or after March 27, 2017 will be evaluated differently. 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017).

404.1527(c)(1)). "[A]n administrative law judge is not bound by an examining physician's opinion and must evaluate it in the context of the expert's medical specialty and expertise, supporting evidence in the record, consistency with the record as a whole and other explanations regarding the opinion." *Ziegler v. Astrue,* 576 F. Supp. 2d 982, 996 (W.D. Wisc. 2008) (citing *Haynes v. Barnhart,* 416 F.3d 621, 630 (7th Cir. 2005)). Furthermore, "[a]n administrative law judge can reject an examining physician's opinion if his reasons for doing so are supported by substantial evidence in the record." *Ziegler,* 576 F. Supp. 2d at 996 (citing *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003)). "When the record contains well supported contradictory evidence, even a treating physician's opinion 'is just one more piece of evidence for the administrative law judge to weigh.'" *Ziegler,* 576 F. Supp. 2d at 996 (quoting *Hofslien v. Barnhart,* 439 F.3d 375, 377 (7th Cir. 2006)).

In the present case, Plaintiff argues the following: (1) "Whether the ALJ met the required standard of giving appropriate weight to the opinion of the treating physician;" (2) "Whether the ALJ considered the combined effects of all the Plaintiff's impairments without regard to whether any such impairments, if considered separately, would be of sufficient severity to render Plaintiff disabled;" and (3) "Whether a reasonable person could conclude and justify that Plaintiff is not disabled in light of

16

the substantial limitations assigned by the treating physician, supported by overwhelming evidence of many years of physical difficulties." [DE 8, at 2-3]. Despite Plaintiff framing his issues as separate, the Court will consider the issues together due to their substantial overlap.

Initially, Plaintiff argues, "[T]he ALJ erred in not giving more weight to the treating source in this claim, namely that of respected orthopedic surgeon Ryan Donegan." [DE 8, at 7]. In addition to Dr. Donegan, Plaintiff argues the ALJ should have given more weight to "the treating Nurse Practitioner, Melissa Collett" and Dr. Royalty. *Id*. As Defendant correctly asserts, "Ms. Collett is not a 'treating physician . . . .'" [DE 10, at 10 (citing 20 C.F.R. § 404.1527(a)(1)-(2), (c)(2)). Indeed, nurse practitioners, like Ms. Collett, are not considered "acceptable medical sources" and, therefore, not considered treating sources. *See* SSR 06-03P, 2006 WL 2329939 (S.S.A.). "Only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." *Id*. (citing 20 CFR § 404.1527(d); 20 C.F.R. § 416.927(d)). "In addition to evidence from 'acceptable medical sources,' [ALJs] may use evidence from 'other sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id*. "Other sources" include "[m]edical

17

sources who are not 'acceptable medical sources,' such as nurse practitioners . . . ."

Here, since Ms. Collett is not a treating source, the ALJ did not have to give her opinion controlling weight. However, the Court of Appeals for the Sixth Circuit has explained that when an ALJ rejects a treating nurse practitioner's opinion, the ALJ must "provide[] some basis for why [they are] rejecting the opinion." *Cruse v. Comm'r Of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). In the present case, ALJ did just that by explaining that she granted "little weight" to Ms. Collett's opinion that Plaintiff could not work due to his impairments discussed previously herein because "the objective medical evidence does not support such severe limitations," and "the claimant's various activities of daily living reflected an ability to attend to her personal needs and physically function." [Tr. 56].

In addition to Ms. Collett, Dr. Royalty found Plaintiff could not work due to his impairments, which have been previously discussed herein. [Tr. 992]. The ALJ explained that she gave "[Dr. Royalty's] opinion that Plaintiff was 'unable to work due to these conditions,' [Tr. 992], no weight because it is an issue reserved to the Commissioner." [Tr. 56]. Likewise, the ALJ gave no weight to the opinion of Ms. DeLair that Plaintiff was "disabled from all work activities for which he is qualified for by training or experience," [Tr. 998]. [Tr. 56].

18

The ALJ properly explained why she gave no weight to Dr. Royalty and Ms. DeLair's opinions because opinions on issues reserved to the Commissioner, such as whether a claimant is "disabled" or "unable to work," are not considered medical opinions. 20 C.F.R. § 404.1527(d). Instead, such opinions are afforded no "special significance," as they are "issues reserved to the Commissioner because they are administrative findings that are dispositive of a case . . . ." *Id*. A medical source may give an opinion on the severity of a claimant's impairments, but they may not attempt to "direct the determination or decision of disability" by stating a claimant is "'disabled' or 'unable to work.'" *See id*. Such a determination rests with the Commissioner.

Regarding Plaintiff's rather ambiguous arguments that the ALJ erred by allegedly not giving Dr. Donegan's opinions more weight and by ignoring Dr. Donegan's opinions about Plaintiff's limitations caused by his alleged impairments related to his right shoulder injuries, the Court is puzzled by Plaintiff's reasoning. *See* [DE 8, at 6-8]. In the ALJ's decision, she, in fact, gave significant weight to Dr. Donegan's opinion finding Plaintiff had a 10% left shoulder impairment and a 6% whole person impairment. [Tr. 790]. After Plaintiff submitted the October 2017 treatment note [Tr. 1057-63], which discussed Dr. Donegan ordering an MRI and attempting to alleviate Plaintiff's pain in his right shoulder, and prior to the administrative hearing, Plaintiff's counsel

19

agreed there was no other evidence needed for the record. [Tr. 69-70]. The ALJ failed to mention the October 2017 treatment note in her decision, but the treatment note shows Dr. Donegan was still in the process of determining the extent and precise cause of Plaintiff's injuries to his right shoulder. Also, it does not appear Plaintiff's argument pertains to the October 2017 treatment note, but due to the lack of citations in Plaintiff's Motion [DE 8, at 6-8], it is difficult for the Court to decipher exactly which of Dr. Donegan's opinions Plaintiff is referencing.

Dr. Donegan's March 15, 2017, and June 23, 2017, opinions stating that Plaintiff could perform light work and return to work without any other restrictions and limitations were not submitted to the ALJ for her consideration. [Tr. 92-95]. Instead, they were submitted after the ALJ's decision and only to the Appeals Council. Even if the ALJ would have had access to the March 15, 2017, and June 23, 2017, opinions, the Court fails to see how the opinions would have helped Plaintiff's case, considering they both assert that Plaintiff could return to light work with occasional lifting and/or carrying objects weighing up to twenty (20) pounds. [Tr. 92-93].

It seems most likely that Plaintiff is referring to Dr. Donegan's treatment notes [Tr. 8-12, 32-36, 39-44], oral witness statement [Tr. 18-31], and follow-up evaluation [Tr. 37-38], which are all dated after the ALJ's April 24, 2018, decision. The ALJ

cannot be said to have erred by failing to properly weigh evidence that did not exist at the time of her decision. Likewise, Plaintiff's argument that the ALJ should have considered the combined effects of Plaintiff's injuries—namely determining Plaintiff's right shoulder injury to be a severe impairment based on Dr. Donegan's post-decision findings—is meritless. To the extent Plaintiff's right shoulder injury has worsened after his decision, he may wish to file a new disability claim and could very well receive a different outcome. However, Plaintiff cannot show the ALJ erred by failing to predict that Plaintiff's issues with his right shoulder were going to worsen after the ALJ's denial of Plaintiff's claim.

Insofar as Plaintiff is arguing that the ALJ should have merely weighed the opinions of medical sources differently, that argument is also denied. There is substantial evidence in the record that supports the ALJ's decision that Plaintiff can perform light work with certain limitations, and the ALJ explained why she afforded Ms. Collett and Dr. Royalty's opinions less weight than other medical sources. Moreover, when examining the evidence in the record taken as a whole, Ms. Collett and Dr. Royalty's opinions, as well as Ms. DeLair's opinion, are inconsistent with the opinions of most of the medical sources, including Dr. Donegan's opinions prior to the ALJ's decision. Since the ALJ's decision is supported by substantial evidence, "[e]ven if this

21

Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed . . . ." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010).

### IV. CONCLUSION

For the foregoing reasons, the Court finds no legal error on the part of the ALJ and that her decision is supported by substantial evidence,

**IT IS ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [DE 8] is **DENIED;**

(2) Defendant Commissioner's Motion for Summary Judgement [DE 10] is **GRANTED;**

(3) Defendant's decision denying Plaintiff's disability claim is **AFFIRMED;**

(4) This matter is **DISMISSED** and **STRICKEN FROM THE COURT'S ACTIVE DOCKET;** and

(5) Judgment in favor of Defendant will be **ENTERED** separately.

This 22nd day of March, 2021.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge